# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **NICOLE B.[1]**, | Case No. 6:19-cv-1694-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Mark A. Manning, HARDER, WELLS, BARON & MANNING P.C., 474 Willamette Street, Eugene, Oregon 97401. Of Attorneys for Plaintiff.

Scott Erik Asphaug, Acting United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Jeffrey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Nicole B. (Plaintiff) brings this action pursuant to 42 U.S.C. § 205(g) of the Social

Security Act (the Act), *as amended*, 42 U.S.C. § 405(g), and pursuant to § 1383(c)(3), to obtain

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits under Title II of the Act. For the following reasons, the Commissioner's decision is REVERSED AND REMANDED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

When the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A.  Plaintiff's Application

Plaintiff filed an application for disability insurance benefits on October 27, 2016, alleging disability beginning on August 22, 2015. Plaintiff was born on January 13, 1981 and was 34 years old on the alleged date of onset. The Commissioner denied Plaintiff's claim initially and upon reconsideration. Plaintiff requested a hearing and appeared by video before Administrative Law Judge (ALJ) Mark Triplett on August 6, 2018. The ALJ issued a decision on October 24, 2018 denying Plaintiff's claim for benefits. Plaintiff requested review of the decision from the Appeals Council. Plaintiff's request for review was denied on August 24, 2019. The ALJ's decision became the final decision of the agency. Plaintiff seeks review in this Court.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

As a threshold matter for Plaintiff's disability benefits claim the ALJ found that Plaintiff

met the insured status requirements of the Act through December 31, 2020. AR 22. At step one

of the sequential analysis, the ALJ determined that Plaintiff had not engaged in substantial

gainful activity (SGA) since August 22, 2015, the alleged disability onset date. *Id.* At step two,

the ALJ found the following severe, medically determinable impairments:

thrombosis/hemostasis, obesity, anxiety disorder, and depression. *Id.* At step three, he found no

impairment that met or equaled the severity of any impairment listed at 20 C.F.R. Part 404,

Subpart P, Appendix 1. Tr. 23. AR 23. Next, the ALJ assessed an RFC that Plaintiff could

> perform light work as defined in 20 CFR 404.1567(b)2 except she
> can never climb ladders, ropes, or scaffolds. She must avoid
> exposure to workplace hazards such as unprotected heights and
> exposed, moving machinery. She can perform simple and routine
> tasks.

AR 25.

Proceeding to step four, the ALJ found Plaintiff capable of performing her past relevant

work as a sales attendant. AR 27. In the alternative, the ALJ found at step five that Plaintiff

retained the ability to perform the requirements of jobs existing in significant numbers in the national economy, such as office helper, photocopy machine operator, and inserting machine operator. AR 28. The ALJ concluded that Plaintiff was not disabled under the Act from August 22, 2015, the alleged onset date, through October 24, 2018, the date of the ALJ's unfavorable decision. AR 29.

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to credit and rely on Plaintiff's subjective symptom testimony, testimony from "other" medical sources, and lay witness testimony. The ALJ's rejection of these three forms of testimony, Plaintiff argues, was done without satisfying the relevant standards for rejection of such testimony.

### A. Subjective Symptom Testimony

The ALJ found that the severity of Plaintiff's subjective symptom testimony was "not consistent with the medical record" because her treatment has been "very conservative," consisting of therapy, over the counter, and prescription medications. The treatment Plaintiff received was "not the type of medical treatment one would expect for a totally disabled individual." AR 26. The ALJ further found that Plaintiff's activities of daily living contradicted her symptom testimony. "The claimant indicated that she could perform adequate self-care, care for her son, care for her pets, prepare simple meals, go for walks, drive a car, handle her finances, do household chores, and go out to the store (6E). The record also indicated that the claimant she [sic] could mow the lawn, and engage in hobbies like reading, writing, or scrap booking." *Id.*

Plaintiff argues that the ALJ failed to give specific, clear, convincing reasons supported by substantial evidence for the two rationales he based his rejection of her testimony on.

Defendant argues that the ALJ properly weighed the record as a whole when considering Plaintiff's testimony about the intensity, persistence, and limiting effects of her symptoms.

### 1. General Standard

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because, however, case law references the term "credibility," it may be used in this Opinion and Order.

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however,

discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

### 2. Conservative Treatment

Routine, conservative treatment can be sufficient to discount a claimant's subjective testimony regarding the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program" permits the inference that symptoms were not "as all-disabling" as the claimant reported. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). If, however, the claimant has a good reason for not seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the claimant's subjective symptoms. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155,162 (9th Cir. 2008).

Plaintiff argues that the ALJ found that her treatment record was conservative, without offering any evidence showing that her treatments were conservative relative to her alleged impairments. The Court agrees. "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). For example, a plaintiff who was diagnosed with a condition which could produce disabling symptoms, but for which there is no known treatment, could not be faulted for the lack of aggressive treatment options available. The ALJ did not identify a more aggressive alternative treatment option for Plaintiff's condition, compare Plaintiff's treatment record with a sufficiently aggressive treatment for her disabling conditions, or otherwise take into account the condition being treated. Merely proclaiming that treatment has been conservative, without taking into account the condition being treated or the treatments available is legally insufficient. This type of

statement is not a clear and convincing reason supported by substantial evidence to support a finding that subjective symptom testimony is not credible.

The Commissioner also argues that the ALJ relied on Plaintiff's "improvement" with treatment in his assessment of her subjective symptom testimony. In making this argument, the Commissioner relies on statements made during the hearing that are not given as rationales in the ALJ's opinion. The ALJ did not refer in his decision to improvement as a reason for rejecting the severity of Plaintiff's symptom testimony. Improvement is mentioned briefly in the discussion of Plaintiff's *mental health* treatment in consideration of Plaintiff's mental functioning:

> For her mental health, the claimant has been treated with therapy as well as multiple medications including Duloxetine, Zoloft, Lexapro, Effexor, Wellbutrin, and aripiprazole, **with some improvement in symptoms** (19E; IF/3; 2F/1 l; 4F/5; 6F; 7F/25; 8F). The above residual functional capacity reflects these objective findings by limiting the claimant to performing only simple routine tasks.

AR 26. "While the court may make limited inferences from unclear or poorly stated explanations, an ALJ's decision may not be upheld based on '*post hoc* rationalizations that attempt to intuit what the ALJ might have been thinking.'" *Esser v. Colvin*, 2016 WL 5746353, at *3 (D. Or. Oct. 3, 2016) (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009)).

The Commissioner asks the Court to rely on the ALJ's brief mention about "some improvement" in Plaintiff's mental health as a result of prescription medication, and extrapolate from that that the ALJ intended to rely on statements not referenced in the ALJ's decision about Plaintiff's improvement in other areas. The Commissioner points to examples from the hearing where Plaintiff acknowledges improvement in some symptoms. This extends beyond an inference and enters the realm of *post hoc* rationalizations. There is nothing in the ALJ's decision about Plaintiff's symptom testimony indicating that improvement associated with her mental

health prescription drugs is related to improvement from treatment of Plaintiff's physical
limitations, or that the ALJ intended to justify his decision to discount Plaintiff's subjective
symptom testimony on the basis of that improvement.

### 3. Activities of Daily Living

Daily living activities may provide a basis for discounting subjective symptoms if the
plaintiff's activities either contradict his or her testimony or meet the threshold for transferable
work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495
F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the
activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's
activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A
claimant, however, need not be utterly incapacitated to receive disability benefits, and
completion of certain routine activities is insufficient to discount subjective symptom testimony.
*See id.* at 1112-13 (noting that a "claimant need not vegetate in a dark room in order to be
eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th
Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Vertigan
v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere
fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car,
or limited walking for exercise, does not in any way detract from her credibility as to her overall
disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair
v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Reddick v. Chater*, 157 F.3d 715, 722 (9th
Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations
to be relevant to his or her credibility and noting that "disability claimants should not be
penalized for attempting to lead normal lives in the face of their limitations"). Moreover,
particularly with certain conditions, cycles of improvement may be a common occurrence, and it

is error for an ALJ to pick out a few isolated instances of improvement over a period of months

or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See*

*Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

Plaintiff argues that the ALJ's finding that her activities of daily living are inconsistent

with the severity of symptoms alleged is insufficient because none of Plaintiff's activities, as

actually performed, demonstrates an ability to sustain exertion inconsistent with Plaintiff's

claimed limitations. The primary symptoms Plaintiff alleges interfere with her ability to maintain

SGA are migraines and fatigue, and she argues that her daily activities are tasks she can perform

periodically and at her discretion, allowing her to rest and take medication as needed. She also

highlights that she requires and receives help with child care when she is too fatigued to care for

her son.

The Commissioner responds that the ALJ's decision is properly supported by his

evaluation of Plaintiff's activities of daily living. The ALJ references the following activities:

mowing the lawn, going on walks for exercise, attending therapy even when she has a migraine,

taking care of her cat, doing laundry, vacuuming, scrap booking, writing short stories, and

picking up toys with her son. The Commissioner repeats these activities and the conclusion that

they contradict a "totally debilitating impairment."

The crux of Plaintiff's symptom testimony is that she becomes debilitated by

unpredictable migraines and fatigue, and that she is unable to maintain substantial, gainful

employment as a result. These symptoms are not contradicted by one-off household management

tasks or hobbies. Plaintiff has not testified that she is unable to push enough weight to operate a

lawn mower, that she is unable to walk, that she is unable to carry out the lifting required to

change her cat's litter or do laundry. None of these activities, done on Plaintiff's own schedule

and according to her degree of fatigue or migraine, contradict her subjective symptoms. Plaintiff

also has testified that she receives help taking care of her child as-needed. The ALJ did not

provide any rationale connecting these activities to any symptom or the degree of any symptom

alleged by Plaintiff. The ALJ did not provide legally sufficient reasons for rejecting Plaintiff's

subjective symptom testimony.

### B.  "Other" Medical Source Testimony

The ALJ did not fully credit the opinions of Leann Willis, FNP, and Elizabeth Sunzeri,

LMFT. Plaintiff argues that the ALJ's rejection of these two opinions was not supported by

sufficient evidence. The Commissioner responds that Ms. Willis' opinion was heavily dependent

on Plaintiff's self-reported limitations, and that the ALJ's rejection of Plaintiff's symptom

testimony therefore justifies his rejection of Ms. Willis' opinion. The Commissioner further

responds that Ms. Sunzeri's opinion relied on difficulties created by Plaintiff's circumstances

rather than disabilities that arise from mental and physical impairments.

#### 1.  Standard

Effective March 27, 2017, the Social Security Administration amended its regulations

and SSRs relating to the evaluation of medical evidence, including the consideration of

"acceptable medical sources" and "non-acceptable medical sources" or "other medical sources."[3]

Most of these changes were effective only for claims filed after March 27, 2017. The

Administration, however, implemented revised versions of 20 C.F.R. §§ 404.1527(f)

---

[3] Among other things, the Commissioner rescinded SSR 06-03p, broadened the definition
of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse
practitioners), audiologists, and physician assistants for impairments within their licensed scope
of practice, and clarified that all medical sources, not just acceptable medical sources, can
provide evidence that will be considered medical opinions. *See* 20 C.F.R. §§ 404.1502, 416.902;
82 F. Reg. 8544; 82 F. Reg. 15263.

and 416.927(f) to provide "clear and comprehensive guidance" about how to consider "other" medical sources for claims filed before March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, and the ALJ issued his opinion after March 27, 2017, the revised version of 20 C.F.R. § 404.1527 governs Plaintiff's claim.

This revised regulation incorporates the policy in SSR 06-03p of separating acceptable medical sources (licensed physicians and certain other qualified specialists) from "other" medical sources, and generally giving less deference to "other" medical sources. It also incorporates the policies of requiring the ALJ to consider "other" medical source opinions, explain the weight given to such opinions, provide sufficient analysis to allow a subsequent reviewer to follow the ALJ's reasoning, and to provide sufficient detail and explanation if the ALJ gives greater weight to an opinion from an "other" medical source than a medical opinion from a treating source. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844, 5845; *see also* 20 C.F.R. §§ 404.1527(f), 416.927(f). Because Ms. Willis is a nurse practitioner and Ms. Sunzeri is a licensed therapist, both are considered "other" medical sources.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to

those reasons when rejecting similar testimony by a different witness." *Id*. at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Molina*, 674 F.3d at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of the claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

## 2. Analysis

### a. Ms. Willis' Opinion

The Commissioner argues that the ALJ's assignment of "little" weight to Ms. Willis' opinion was proper because Ms. Willis relied on Plaintiff's self-reported limitations, and the ALJ properly rejected Plaintiff's subjective symptom testimony. The Commissioner argued no other reasons in support.[4] As discussed above, the ALJ's rejection of Plaintiff's symptom testimony was *not* sufficient and cannot support the decision to assign little weight to Ms. Willis' opinion.

---

[4] The ALJ provided additional reasons for discounting Ms. Willis's opinion, but the Commissioner did not defend those reasons, "apparently conceding it is erroneous." *Kara M. v.*

### b.  Ms. Sunzeri's Opinion

The Commissioner argues that the ALJ properly discounted the opinion of Ms. Sunzeri because it was "influenced by [Plaintiff's] situational needs, not on her physical or mental impairments" and because Ms. Sunzeri's recommendation of part-time work contradicted a finding of disability. The ALJ provides no explanation or detail about what he meant when he stated that Ms. Sunzeri's opinion was influenced by Plaintiff's situational needs, and not her physical or mental impairments.

That Ms. Sunzeri's opinion relays the correlation between Plaintiff's symptoms and her situation does not render it unreliable. The opinion states that when Plaintiff was asked to work more hours, Plaintiff experienced "migraines, fatigue, soreness, and other symptoms which are part of her blood disorder." Ms. Sunzeri indicates her observation that Plaintiff's symptoms, which result from a medically determinable impairment, are made worse when greater work demands are placed on Plaintiff. The Commissioner argues that a plaintiff's disability must arise from limitations due to medically determinable impairments, not difficult life circumstances. Ms. Sunzeri explicitly states, and the record otherwise clearly reflects, that Plaintiff has symptoms that arise from medically determinable impairments. Acknowledging and explaining the impact of greater work demands on Plaintiff's symptoms is not a sufficient basis for discounting an opinion.

Ms. Sunzeri opined that Plaintiff's symptoms were being worsened by an increase in hours at her part-time work at the casino, and suggested she take a three-month break and then

---

*Comm'r of Soc. Sec.*, 2020 WL 6144816, at *3 (W.D. Wash. Oct. 20, 2020); *see also Landeros Zamora v. Comm'r of Soc. Sec. Admin.*, 2020 WL 5810060, at *3 (D. Ariz. Sept. 30, 2020) ("Because the Commissioner does not defend the validity of–let alone, mention–the other reasons the ALJ provided for discounting Plaintiff's allegations in his argument, the Court presumes that Plaintiff's allegations of error with respect to them are meritorious . . . .").

return to her flexible, part-time work. The Commissioner defends the ALJ's rejection of

Ms. Sunzeri's opinion on the basis Ms. Sunzeri encouraged Plaintiff to continue to pursue part-

time work. This rationale misstates Ms. Sunzeri's opinion and misrepresents Plaintiff's

circumstances. Plaintiff's work situation is highly unique. At the time of the hearing, Plaintiff

had obtained part time employment at a casino, where she is able to work flexibly depending on

her condition and symptoms. She testified that she can work "a few hours" at a time, that she can

take unscheduled breaks as needed, and that she can end shifts early to go home if she is unable

to continue working. AR 57-58. She attributes her flexible schedule to the supportiveness of her

Native American tribe, which operates the casino. AR 58. Ms. Sunzeri's acknowledgment that

Plaintiff may continue to work part time to the extent she is able does not undermine the value of

her opinion testimony or contradict Plaintiff's symptom testimony, and is not a valid reason for

rejecting it. The ALJ did not provide valid, germane reasons for rejecting the "other" medical

source testimony of Ms. Willis and Ms. Sunzeri.

**C. Lay Witness Testimony**

Plaintiff argues that the ALJ did not provide germane reasons to reject the testimony of

Plaintiff's friend, Ms. P., and Plaintiff's former employer, Mr. T. The Commissioner argues that

the reasons given for rejecting Plaintiff's subjective symptom testimony apply to the non-

medical lay witness statements, which largely echo the subjective symptom testimony, and any

error was harmless.

The standards for considering nonmedical lay witness testimony are the same as those for

considering "other" medical source witness testimony for claims filed before March 2017. The

ALJ must consider the lay witness testimony, can discount it based on germane reasons, and

need not provide individualized analysis if the testimony of the lay witness is similar to the

testimony of another witness already discussed by the ALJ. *Molina*, 674 F.3d at 1114; *Stout*, 454

F.3d at 1053. The ALJ cannot ignore a lay witness, but the error is harmless if the testimony is similar to other validly discounted testimony or is contradicted by more reliable medical evidence credited by the ALJ, but if uncontradicted and highly probative evidence from a lay witness is ignored, then the ALJ erred unless the Court can confidently conclude that no reasonable ALJ, when crediting the testimony, could have reached a different conclusion. *Molina*, 674 F.3d at 1115, 1118-19; *Stout*, 454 F.3d at 1056.

The ALJ gave "some weight" to the two lay witness statements, which communicated restrictions on Plaintiff's activities of daily living, decreased work capacity, and functional limitations with respect to lifting, standing, walking, and completing tasks. The ALJ provided no reasons for assigning only some weight to these statements. Because an ALJ must give germane reasons for rejecting lay witness statements, the ALJ's failure to do so was error.

**D. Harmless Error Analysis**

**1. Standard**

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). A court should not automatically reverse on account of error, but should make a determination of prejudice. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "Determination of prejudice requires 'case-specific application of judgment, based upon examination of the record,' not 'mandatory presumptions and rigid rules.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009)). These case-specific factors are "various" and potentially include, among others:

> an estimation of the likelihood that the result would have been
> different, an awareness of what body (jury, lower court,
> administrative agency) has the authority to reach that result, a

consideration of the error's likely effects on the perceived fairness,
integrity, or public reputation of judicial proceedings, and a
hesitancy to generalize too broadly about particular kinds of errors
when the specific factual circumstances in which the error arises
may well make all the difference.

*Shinseki*, 556 U.S. at 411-12.

The party claiming error has the burden "to demonstrate not only the error, but also that it affected his [or her] 'substantial rights,' which is to say, not merely his [or her] procedural rights." *Ludwig*, 681 F.3d at 1054. Additionally, a reviewing court can determine, based on the circumstances of the case, that further administrative review is required to determine whether there was prejudice from the error. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011). Mere probability of prejudice is not enough, but where there is a substantial likelihood of prejudice, then remand is appropriate. *Id.*

### 2. Analysis

The ALJ erred in his rejection of Plaintiff's subjective symptom testimony, the "other" medical source testimony, and the lay witness testimony. The Court must determine whether that rejection was prejudicial or constitutes harmless error. For the reasons below, the Court finds that the ALJ's error was prejudicial.

The Vocational Expert (VE) testified that if an employee needed to miss work four or more times per month, that employee would not be able to obtain and sustain work in a competitive labor market. AR 66. The VE further testified that the need to take unscheduled breaks that lasted one to two hours would also preclude employment in a competitive labor market. AR 66-67.

Plaintiff testified to her need for unscheduled breaks, and to miss work on an unpredictable and frequent basis. Among other statements, Ms. Willis opined that Plaintiff would have headaches 2-3 days a week for 2-8 hours, and would be precluded from working during

those headaches. AR 468. Ms. Sunzeri similarly opined that Plaintiff cannot work full time because working beyond a limited, flexible part-time schedule worsens Plaintiff's condition. AR 596. The lay witness testimony largely echoed the limitations in Plaintiff's subjective symptom testimony and the "other" medical source opinions. In light of the VE's testimony, the Court cannot conclude that the ALJ's error in improperly discounting all of this testimony was inconsequential to the ALJ's ultimate determination. Therefore, the ALJ's error was prejudicial.

**E.  Remand for Further Proceedings**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The Court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the

district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

There are conflicts and ambiguities in the record at the first step of the credit-as-true doctrine that require further proceedings rather than an award of benefits. First, there are conflicts and ambiguities with respect to Plaintiff's physical impairments. The only physical impairment that the ALJ found severe at step two is Plaintiff's thrombosis, but there potentially are conflicts with some limitations discussed in the improperly rejected testimony and medical evidence discussed by the ALJ relating to Plaintiff's thrombosis. Plaintiff did not challenge the ALJ's finding at step two that her migraines and fibromyalgia were not severe impairments. To be a significant impairment, a condition must significantly limit Plaintiff's ability to perform substantial work activity, and last for a period of at least 12 continuous months. Thus, the ALJ's step two finding necessarily means that Plaintiff's migraines and fibromyalgia would not significantly limit her ability to perform substantial work activity. Yet, the testimony that was improperly discounted by the ALJ focuses heavily on the limiting effects of Plaintiff's headaches and her fatigue. To the extent those impairments were caused by Plaintiff's thrombosis, there may be conflicts with other medical evidence discussed by the ALJ. To the extent those impairments were caused by Plaintiff's fibromyalgia or migraines, a conflict exists with the ALJ's step two finding. Of course, upon remand, after proper consideration is given to the opinions of Ms. Willis and Ms. Sunzeri, the step two findings relating to fibromyalgia and migraines may change.

Second, there also are conflicts and ambiguities between the improperly rejected testimony and the state agency consulting medical opinions on Plaintiff's mental health

impairments. The state agency consulting medical opinions conflict with the Sunzeri and Willis

opinions and affirm Plaintiff's ability to maintain SGA. See AR 84-110. Because the record is

not free from ambiguities and conflicts, the Court remands for further proceedings.

**CONCLUSION**

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND

REMANDED for further proceedings as discussed in this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of March, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge